IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

|  |  |
|---|---|
| PATRICK C.,[1]<br><br>                    Plaintiff,<br><br>         v.<br><br>COMMISSIONER OF SOCIAL<br>SECURITY,<br><br>                    Defendant. | Civil No. 24-9154 (RMB)<br><br><br>**OPINION** |

**RENÉE MARIE BUMB, Chief United States District Judge:**

Plaintiff Patrick C. asks this Court to overturn the Commissioner of Social Security's (Commissioner) denial of his application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act (the Act), 42 U.S.C. §§ 401 *et seq.* Patrick faults the Administrative Law Judge (ALJ) for, among other things, not properly crediting certain medical opinions from treating physicians and state-agency consultant examiners.

For the reasons below, the Court **AFFIRMS** the ALJ's decision finding Patrick not disabled under the Act.

I. **LEGAL STANDARDS**

A. **Standard of Review**

The Act grants federal courts limited power to review the Commissioner's decision to deny an applicant DIB. 42 U.S.C. § 405(g). While courts conduct a plenary review of legal

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that federal courts should refer to plaintiffs in social security disability cases by only their first names and last initials given the significant privacy concerns in these matters. *See also* D.N.J. Standing Order 2021-10.

issues the Commissioner decides, *see Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000), the Act requires courts to uphold the Commissioner's factual decisions if supported by "substantial evidence," 42 U.S.C. § 405(g).  *See also Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000).  This evidentiary threshold is "not high" and "means only . . . such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (internal quotation marks omitted) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  The substantial evidence standard is a deferential one, and a court cannot set aside the Commissioner's decision merely because "acting de novo [it] might have reached a different conclusion."  *See Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986).  Indeed, courts cannot "weigh the evidence or substitute [its own] conclusions for those of the [Commissioner.]"  *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005) (first alteration in original, internal quotation marks and citation omitted).

Still, while deferential, the substantial evidence inquiry is not a perfunctory exercise to rubberstamp the Commissioner's decision.  *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) (explaining the substantial evidence standard is not "a talismanic or self-executing formula for adjudication," rather, the standard requires a "qualitative exercise").  Thus, when reviewing the Commissioner's decision, courts must "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight."  *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018) (internal quotation marks and citation omitted).

Where, as here, the Appeals Council denies a claimant's request for review of an ALJ's decision, the "ALJ's decision is the Commissioner's final decision."  *Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001).  The ALJ's decision must have enough information to "permit

meaningful judicial review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004). This requires the ALJ to explain what evidence the judge considered that "supports the result" and "some indication of the evidence [the judge] rejected." *Smith v. Comm'r of Soc. Sec.*, 178 F. App'x 106, 111 (3d Cir. 2006) (quoting *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981)). Otherwise, courts "cannot tell if significant probative evidence was not credited or simply ignored." *Cotter*, 642 F.2d at 705. Courts will set aside an ALJ's decision if the judge failed to consider the entire record or resolve an evidentiary conflict. *Fargnoli v. Massanari*, 247 F.3d 34, 41-42 (3d Cir. 2001).

**B.  The Social Security Disability Determination**

To qualify for DIB, a claimant must show he is disabled. 42 U.S.C. § 423. "Under the [Act,] a disability is established where the claimant demonstrates that there is some medically determinable basis for an impairment that prevents him from engaging in any substantial gainful activity for a statutory twelve-month period." *Fargnoli*, 247 F.3d at 38-39 (internal quotation marks and citation omitted). "A claimant is considered unable to engage in any substantial gainful activity 'only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* at 39 (quoting 42 U.S.C. § 423(d)(2)(A)).

The Commissioner makes a disability determination through a five-step sequential process. 20 C.F.R. § 404.1520(a)(4). For steps one through four, the claimant bears the burden of proof. *Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 201 (3d Cir. 2019). At the fifth step, the Commissioner shoulders the burden. *Id.* The five-steps are:

> At step one, the ALJ determines whether the claimant is performing "substantial gainful activity." 20 C.F.R. §§

3

404.1520(a)(4)(i), 416.920(a)(4)(i). If he is, he is not disabled. *Id.* Otherwise, the ALJ moves on to step two.

At step two, the ALJ considers whether the claimant has any "severe medically determinable physical or mental impairment" that meets certain regulatory requirements. *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). A "severe impairment" is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" *Id.* §§ 404.1520(c), 416.920(c). If the claimant lacks such an impairment, he is not disabled. *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If he has such an impairment, the ALJ moves on to step three.

At step three, the ALJ decides "whether the claimant's impairments meet or equal the requirements of an impairment listed in the regulations." [*Smith v. Comm'r of Soc. Sec.*], 631 F.3d [632, 634 (3d Cir. 2010)]. If the claimant's impairments do, he is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If they do not, the ALJ moves on to step four.

At step four, the ALJ assesses the claimant's "residual functional capacity" (RFC) and whether he can perform his "past relevant work." *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). A claimant's "[RFC] is the most [he] can still do despite [his] limitations." *Id.* §§ 404.1545(a)(1), 416.945(a)(1). If the claimant can perform [his] past relevant work despite [his] limitations, he is not disabled. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If he cannot, the ALJ moves on to step five.

At step five, the ALJ examines whether the claimant "can make an adjustment to other work[,]" considering his "[RFC,] . . . age, education, and work experience." *Id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). That examination typically involves "one or more hypothetical questions posed by the ALJ to [a] vocational expert." *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984). If the claimant can make an adjustment to other work, he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If he cannot, he is disabled.

*Hess*, 931 F.3d at 201–02 (some alterations omitted).

## II. BACKGROUND

### A. Patrick's Application for DIB, the Commissioner's Decision, and the Administrative Hearing

Patrick applied for DIB under the Act claiming a disability onset date of June 23, 2021. [Administrative Record (AR) 205-AR211.] He claimed a previous stroke and his epileptic seizures disabled him. [AR249, AR254-AR255.] The Commissioner denied his initial application and his reconsideration request. [AR117-AR21; AR131-AR136.] Patrick then requested a hearing before an ALJ to challenge the Commissioner's decisions. [AR142-AR43.]

At the hearing, Patrick discussed his prior stroke and seizures. [AR52-AR53.] He had a seizure while at work and, as a result, could no longer drive. [AR47, AR52-AR53.] He has had several seizures and has been prescribed medication for the seizures. [AR53.] On top of the seizures, Patrick complained about back and right-arm pain. [AR54-AR55.] He has been experiencing back pain for about two years, and the pain is worse when he walks. [AR54.] Sitting down and changing his position helps alleviate the back pain. [AR54-AR55.] For his right-arm, he complained about lack of feeling. [AR55-AR56.] He often has difficulty gripping objects, like a knife. [AR57, AR60.] He also has trouble with memory and concentration and has difficulty "finding [his] words." [AR56.] Sometimes, Patrick becomes frustrated when he cannot find his words and leaves the social setting he is in out of frustration. [AR56-57, AR63.]

Despite his health problems, Patrick can perform some household chores, like vacuuming and limited yardwork, and "sometimes" prepares his own meals. [AR57-AR58, AR61.] Patrick's friends help him with chores, provide transportation, take him shopping,

and perform other tasks.  [AR56, AR58-AR59.]  At the hearing, Patrick's friend discussed Patrick's conditions and how Patrick needs help.  [AR70-AR73.]

**B. The ALJ's Decision and the Appeals Council's Decision**

The ALJ found Patrick not disabled under the Act.  [AR29.]  In doing so, the ALJ found Patrick could perform work at a medium exertion level with certain limitations.  [AR23, AR27.]   While the ALJ found Patrick could not perform his past relevant work as a heavy machine operator and truck/bus driver given his RFC, the judge concluded that, after considering Patrick's age, experience, and education, as well as his RFC, Patrick could make a "successful adjustment to other work that exists in significant numbers in the national economy[,]" like a kitchen helper or packager.  [AR28-AR29.]

Turning to the ALJ's reasoning, the judge found Patrick had not engaged in substantial gainful activity after his alleged disability onset date.  [AR19.]  At step two, the ALJ found Patrick's seizure disorder, discogenic degenerative spine disease, status-post stroke, hypertension, and adjustment disorder to be severe impairments.  [AR19-AR20.]  The judge found those impairments significantly limited Patrick's ability to perform basic work activities.  [*See* AR20.] The judge found Patrick's obesity to be a non-severe impairment given the lack of evidence "of any significant or additional limitations" attributable to his obesity.  [*Id.*]

Onto step three, the ALJ found none of Patrick's impairments met or equaled the severity of impairments listed in the regulations.  [AR20-AR21.]  In doing so, the ALJ considered Listings 11.02 (epilepsy), 11.04 (insult to the brain), 1.15 (skeletal spine disorders compromising nerve roots), 1.16 (lumbar spinal stenosis compromising the cauda equina), and 12.04 (depressive, bipolar and related disorders).  [AR20-AR22.]

For example, when considering Listing 12.04, the ALJ found Patrick's mental impairments did not satisfy the "Paragraph B" or "Paragraph C" criteria. [AR21-AR22.] "To satisfy the paragraph B criteria, [a claimant's] mental disorder must result in 'extreme' limitation of one, or 'marked' limitation of two, of the four areas of mental functioning"— that is, a claimant's ability to (1) "[u]nderstand, remember, or apply information;" (2) "interact with others;" (3) "concentrate, persist, or maintain pace;" and (4) "adapt or manage oneself." 20 C.F.R. pt. 404, subpt. P, app. 1. Given the medical evidence in the record, the ALJ concluded that Patrick only has moderate limitations in the four areas of mental functioning. [AR21-AR22.] Paragraph C criteria requires a mental disorder to be "serious and persistent" for at least two years and to satisfy additional criteria. 20 C.F.R. pt. 404, subpt. P, app. 1. The ALJ found Patrick's mental impairment did not satisfy the Paragraph C criteria because the evidence failed to show he has "achieved only marginal adjustment." [AR22.] The ALJ concluded Patrick could make adjustments in his environment and daily life, given his ability to do household chores, interact with others, go shopping, and so on. [*Id.*]

For step four, the ALJ found Patrick had the RFC to perform work at the medium exertion level with several limitations. [AR23.] The ALJ found Patrick can never "climb ladders, ropes, or scaffolds" and "must avoid all exposure to hazards such as heavy machinery and unprotected heights." [*Id.*] The ALJ found Patrick can "understand, remember, [] carry-out simple instructions[,] . . . use judgment to make simple work-related decisions, . . . deal with occasional changes in a routine work setting, and . . . have occasional interaction with the general public." [*Id.*] In reaching this RFC, the ALJ concluded Patrick's medically determinable impairments "could reasonably be expected to cause the alleged symptoms."

[AR24.]  The judge, however, found Patrick's statements on the "intensity, persistence, and limiting effects of [his] symptoms not entirely consistent with the medical evidence and other evidence[.]"  [*Id*.]

For his seizure disorder, the ALJ found the disorder was controlled by medication.  [*Id*.]  The judge noted that Patrick had experienced a seizure after missing a dose of his medication the day before.  [*Id*.]  But after a medical provider increased the dosage, Patrick remained seizure-free.  [AR24-AR25.]    Still, given Patrick's seizure disorder, the ALJ concluded Patrick could never climb a ladder or ropes, and must avoid exposure to heavy machinery and unprotected heights.  [AR25.]

Turning to the residual effects of Patrick's previous stroke, the ALJ found those effects minimal.  [*Id*.]  The judge noted physical examinations were unremarkable and Patrick did not report weakness in his arms or legs to medical providers.  [*Id*.]  A medical provider diagnosed him with expressive aphasia, *id.*—"a language disorder that makes it difficult for individuals to speak clearly and effectively[,]" Sarah Jividen, *Expressive Aphasia: What to Know About Communication Disorders*, Verywell Health, May 20, 2024, available at: https://www.verywellhealth.com/expressive-aphasia-8622957 (last visited Sept. 18, 2025).  The judge noted that a "[s]peech assessment showed only mild dysarthria[,]" AR25—"a neuromotor disorder that results from abnormalities in speed, strength, accuracy, range, tone, or duration required for speech control[,]" Dilip Kumar Jayaraman & Joe M. Dias, *Dysarthria*, Nat'l Library of Medicine (last updated June 5, 2023), available at: https://www.ncbi.nlm.nih.gov/books/NBK592453/ (last visited Sept. 18, 2025).  The ALJ also noted medical records revealed Patrick "did have some word finding difficulty at

times[.]" [AR25.]    Given those difficulties and Patrick's expressive aphasia, the ALJ concluded that Patrick can only have "occasional interaction with the general public." [*Id.*]

For his back pain, the ALJ noted that imaging showed "advanced generalized discogenic degenerative spine disease—spinal stenosis." [*Id.*]    While Patrick's primary provider noted "decreased strength" in Patrick's "bilateral lower extremities" and Patrick had difficulty "getting up from [a] seated position[,]" the ALJ found the provider did not diagnose a back impairment or recommend treatment. [*Id.*] In fact, the ALJ noted Patrick's treatment provider "found normal exams, with no mention of back pain." [*Id.*] The ALJ concluded that the medical evidence did not support Patrick's claims about his limitations on standing, walking, and sitting. [*Id.*]

Shifting to Patrick's depression and adjustment disorder, the ALJ examined Patrick's medical records and the findings of a consultative examiner, Dr. Christopher Williamson, Psy.D. [AR25-26.]    For Patrick's depression, the ALJ noted Patrick's medical records revealed he denied feeling down or depressed and had a zero-depression score. [AR25.] The judge also noted Patrick's medical records revealed he "was fully oriented, his attention and concentration were normal, his recent and remote memory were normal, and his fund of knowledge was normal." [*Id.*]

For Patrick's adjustment disorder, the ALJ considered Williamson's report. [AR25-AR26.] The judge observed that Williamson's examination showed that Patrick "has no formal thought disorder," lacked compulsive thinking or behavior, denied suicidal ideation, and could complete simple math calculations. [AR25.] Williamson conducted testing using the "Wechsler Memory Scale" and Patrick scored "in the borderline range." [AR25-AR26.] Given Williamson's findings, the ALJ found Patrick must be "limited to

simple, low stress work, defined as only simple instructions, simple work-related decisions, occasional changes in a routine work setting, and only occasional interaction with the general public."  [AR26.]

The ALJ also considered opinions by various medical providers, consultative examiners, and state-agency medical and mental health professionals.  [AR26-AR27.] Relevant here, the ALJ did not "evaluate" Williamson's report for "persuasiveness" since Williamson did not "offer an opinion as to degree of function."  [AR26.]  That said, the ALJ found Williamson's report "offer[ed] a thorough and informative examination."  [AR26.] The ALJ found Patrick's presentation for Williamson's examination to be inconsistent with his presentation for other medical providers.  [*Id.*]  Pointing to Patrick's neurology records, the ALJ found certain providers found Patrick to be fully oriented, had normal attention and concentration, and his recent and remote memory were normal.  [*Id.*]

Turning to the state-agency medical providers, the ALJ rejected those providers' opinions of "no exertional impairment" since the medical evidence supported a finding of medium exertion.  [*Id.*]  For Patrick's mental impairments, the ALJ found the state-agency providers' opinions as to "mild to moderate mental impairment . . . generally persuasive." [*Id.*]  In doing so, the ALJ looked to Williamson's finding that Patrick "had word finding difficulties" and could not "complete serial 7s," *id.*—"a cognitive assessment requiring a patient to subtract 7 from 100 in reverse order."  *Mary L. v. Kijakazi*, 2022 WL 1058370, at *7 n.2 (D.N.J. Apr. 8, 2022).  But the ALJ also noted that Williamson concluded Patrick had no formal thought disorder and could complete simple math equations.  [AR27.]

For Patrick's primary care provider, Dr. Josette Palmer, the ALJ found Palmer's opinion on Patrick's limitations unpersuasive.  [AR26.]  The ALJ noted Palmer's opinion

was inconsistent with his treatment notes and the entire medical record.  [*Id.*]  The ALJ also noted Palmer's opinion was based on Patrick's presentation "during one visit."  [*Id.*]

All in all, the ALJ found that Patrick had severe impairments, but the judge concluded Patrick's allegations on his limitations and symptoms were inconsistent with the medical evidence.  [AR27.]   So the ALJ formulated an RFC at the medium exertion level with additional limitations.  [*Id.*]

With that RFC at hand, the ALJ found Patrick could not perform his past work as a heavy machine operator and driver.   [AR28.]   But, after considering Patrick's age, educational level, and work experience, the ALJ found Patrick could perform other work in the national economy that exists in significant numbers, like a kitchen helper or packager. [AR28-AR29.]  Accordingly, the ALJ found Patrick not disabled.  [AR29.]

The Appeals Council denied Patrick's request for review.  [AR1-AR6.]

## III. PARTIES' ARGUMENTS

### A. Patrick's Arguments

Patrick first argues substantial evidence does not support the ALJ's mental RFC determination because the judge improperly discredited Williamson's and the state-agency reviewing psychologists' opinions.  [Pl.s' Br. at 8-14 (Docket No. 5).]  For Williamson's opinion, Patrick faults the ALJ for not considering his opinion a "functional opinion."  [*Id.* at 8.]  Patrick argues Williamson found Patrick's memory was "significantly compromised" and his scores on memory testing placed him in the "borderline range" in working memory. [*Id.*]  Patrick also asserts that Williamson found Patrick has "significant difficulty" remembering new information and has difficulty retrieving new information.  [*Id.* at 9.] While Patrick recognizes Williamson's opinion is "not expressed in functional terms[,]"

Patrick asserts Williamson did provide information on Patrick's functioning, like his memory. [*Id.*]  Patrick contends the ALJ's decision never mentions his "extremely low percentile scores in memory."  [*Id.* at 10.]  Patrick adds that Williamson's opinion meets the definition of a medical opinion under the Social Security regulations and the ALJ glossed over the functional limitations Williamson noted in his report.  [*Id.*]

Shifting to the state-agency reviewing psychologists' opinions, Patrick faults the ALJ for failing to fully consider the limitations expressed in their opinions.  [*Id.* at 11.]  For example, Patrick asserts those psychologists noted Patrick has moderate limitations in understanding, remembering, and applying information, concentrating, persisting, and maintaining pace, and so on.  [*Id.*]  Yet Patrick contends the ALJ failed to consider those limitations.  [*Id.*]  In addition, Patrick asserts the ALJ never considered moderate limitations in completing a normal workday "without interruptions from psychologically-based symptoms[.]"  [*Id.* at 12.]

Patrick also contends substantial evidence does not support the ALJ's mental RFC determination that Patrick can have occasional public contact given his cognitive and memory limitations.  [*Id.* at 13.]  Patrick asserts the ALJ never imposed any limitations on Patrick's interactions with supervisors or co-workers.  [*Id.*]  He contends the ALJ gave no explanation of how Patrick can interact freely with supervisors or co-workers, but not the public.  [*Id.*]  Because the ALJ never gave that explanation, Patrick contends the ALJ's mental RFC determination is flawed.  [*Id.* at 13-14.]

On top of the ALJ's mental RFC determination, Patrick challenges the ALJ's physical RFC determination.  [*Id.* at 14-15.]  Patrick argues the ALJ improperly rejected Palmer's opinion.  [*Id.*]  Patrick contends that his lumbar spine x-rays referenced in Palmer's notes

support Palmer's opinion on Patrick's functional limitations.  [*Id.*]  According to Patrick, the ALJ's failure to consider those x-rays as supporting Palmer's opinion was prejudicial error. [*Id.*]

### B. The Commissioner's Arguments

The Commissioner argues substantial evidence supports the ALJ's RFC determination.  [Comm'r Br. at 9-21 (Docket No. 7).]  The Commissioner asserts the ALJ thoroughly considered Patrick's allegations and the objective medical evidence, including Patrick's medical records that showed largely unremarkable examinations.  [*Id.* at 10-11.]  The Commissioner contends the medical record evidence did not fully support Patrick's statements on his limitations and symptoms.  [*Id.* at 10.]

First, the Commissioner rejects Patrick's challenge to the ALJ's mental RFC determination, arguing the ALJ properly considered the state-agency psychologists' opinions when crafting the RFC.  [*Id.* at 12-15.]  The Commissioner asserts the limitations that the state-agency psychologists noted appear in Section I of the Disability Determination Explanation worksheet, which is not the RFC assessment.  [*Id.* at 12.]  Pointing to the Third Circuit's decision in *Smith*, the Commissioner argues that limitations appearing in Section I of that worksheet are not limitations that an ALJ need to consider or accommodate.  [*Id.* at 13.]  Instead, the Commissioner contends courts must look to the narrative section of that worksheet because that section provides the state-agency consultant's medical opinion.  [*Id.*] And the Commissioner argues that the ALJ's mental RFC determination aligns with the state-agency psychologists' opinions in the narrative section of that worksheet.  [*Id.* at 13-14.] In fact, the ALJ provided a more restrictive RFC than the state-agency psychologists by limiting Patrick's interaction with the public to occasional.  [*Id.* at 14.]

Turning to Patrick's challenge to the ALJ's treatment of Williamson's report, the Commissioner argues the ALJ thoroughly considered Williamson's examination throughout the judge's decision. [*Id.* at 19-20.] For example, the Commissioner notes the ALJ considered Williamson's report when rating the "Paragraph B" criteria. [*Id.* at 19.] The Commissioner also asserts that the ALJ considered Williamson's finding on Patrick's memory and recall, but ultimately concluded those findings were inconsistent with other medical evidence. [*Id.*] The Commissioner explains that some of Williamson's findings, like Patrick's word-finding difficulties, were inconsistent with other medical providers' observations that found Patrick to have fluent speech, no dysarthria, and so on. [*Id.*] In sum, the Commissioner contends the ALJ considered Williamson's findings and provided reasons on her treatment of the doctor's report. [*Id.* at 20-21.]

The Commissioner also argues substantial evidence supports the ALJ's mental RFC limitation on public interaction. [*Id.* at 15-16.] Pointing to Patrick's testimony, the Commissioner asserts that Patrick interacts with friends and neighbors and "denied problems getting along with them." [*Id.* at 16.] The Commissioner argues that the ALJ balanced Patrick's word-finding difficulties and expressive aphasia observed during a consult exam with the other medical record evidence showing unremarkable findings on speech and communication. [*Id.*] The Commissioner asserts no medical source has found Patrick has any social limitations. [*Id.*]

Lastly, the Commissioner contends Patrick cannot show any error with the ALJ's treatment of Palmer's opinion. [*Id.* at 18-19.] The Commissioner argues the ALJ provided sufficient reasons for not crediting Palmer's opinion. [*Id.* at 18.] For example, the ALJ noted Palmer's own records undermined the doctor's opinion, which showed no physical

examination abnormalities besides a single visit.  [*Id.*]    Thus, the Commissioner argues substantial evidence supports the ALJ's physical RFC determination.  [*Id.* at 19.]

## IV.  DISCUSSION

### A.  Substantial Evidence Supports the ALJ's Treatment of the Medical Provider's and State-Agency Psychologists' Opinions

Under the Social Security regulations, "a medical opinion is a statement from a medical source about what [a claimant] can still do despite [his] impairment(s) and whether [he has] one or more impairment-related limitations or restrictions" for several work-related abilities, like the "ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting."  20 C.F.R. § 404.1513(a)(2).  ALJs cannot "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources."  20 C.F.R. § 404.1520c(a). The Social Security regulations require ALJs to consider several factors when evaluating the persuasiveness of a medical opinion.   §§ 404.1520c(a), 404.1520c(c).  But ALJs only need to provide an explanation on "whether medical opinions were (1) based on 'objective medical evidence and supporting explanations' and (2) consistent with other medical opinions in the record."  *Zaborowski v. Comm'r of Soc. Sec.*, 115 F.4th 637, 639 (3d Cir. 2024) (citations omitted).  "[A]n ALJ 'need not reiterate the magic words 'support' and 'consistent' for each doctor,' so long as the ALJ 'weave[s] supportability and consistency throughout [the judge's] analysis of which doctors were persuasive.'"  *Chung v. Comm'r of Soc. Sec.*, 2025 WL 1065241, at *3 (3d Cir. Apr. 9, 2025) (quoting *Zaborowski*, 115 F.4th at 639).

### 1. Williamson's Report

To start, the ALJ erred by not evaluating Williamson's report for persuasiveness because the judge found the report "does not offer an opinion as to degree of function." [AR26.] Williamson's report qualifies as a medical opinion under the Social Security regulations because the report details Patrick's memory impairments and his limitations on memory recall that will affect his "ability to perform mental demands of work activities[.]" § 404.1513(a)(2)(ii). For example, after conducting testing, Williamson found Patrick "experiences a rapid loss of relevant information required to accurately perform mental operations at the levels of his peers." [AR609.] Williamson explained that "[w]orking memory is an important prerequisite in many cognitive abilities such that inadequate working memory skills will likely affect [Patrick's] ability to perform other mental operations efficiently." [*Id.*] And Williamson's report revealed that Patrick "could complete simple mathematical calculations of addition and subtraction" and that "despite his limitations, it does appear that [Patrick] is competent to handle his own funds at the present time." [AR609-AR610.] So Williamson's report lays out what Patrick can still do "despite [his] impairment(s)[.]" 20 C.F.R. § 404.1513(a)(2). Thus, Williamson's report qualifies as a medical opinion that the Social Security regulations required the ALJ to evaluate for persuasiveness. § 404.1520c(a).

That said, the ALJ's error was harmless because it would not have changed the outcome. *Holloman v. Comm'r Soc. Sec.*, 639 F. App'x 810, 814 (3d Cir. 2016) (explaining the harmless error review applies to "administrative appeals" and requires a claimant to "explain . . . how the . . . error to which he points could have made any difference" (cleaned up, omissions in original) (quoting *Shinseki v. Sanders*, 556 U.S. 396, 413 (2009))). Despite the

ALJ saying she would not evaluate Williamson's report for persuasiveness, the judge, in fact, thoroughly considered Williamson's report.  [AR21, AR25-AR27.]  Indeed, the ALJ found Williamson's report to be "thorough and informative" and relied on Williamson's findings to determine whether Patrick's mental impairments satisfied the Paragraph B criteria at step three.  [AR21, AR26-AR27.]  The judge also looked to Williamson's report when evaluating the persuasiveness of the state-agency mental health professionals' opinions, and formulating the RFC.  [AR26-AR27.]

The ALJ wove the judge's consideration of the supportability and consistency factors throughout her decision.  *Zaborowski*, 115 F.4th at 639.  To start, the ALJ noted Williamson's report provided "Williamson's clinical findings" and Williamson's diagnosis and findings were based on the doctor's examination and testing of Patrick.  [AR21, AR25-AR26.]  So the ALJ addressed the supportability factor.  § 404.1520c(c)(1).  Likewise, the ALJ addressed the consistency factor when the judge found Williamson's findings inconsistent to other medical providers' findings based on Patrick's presentation.  § 404.1520c(c)(2).  For example, the ALJ contrasted Williamson's findings to another doctor who performed a mental status examination on Patrick.  [AR27.]  That doctor concluded Patrick "had intact recent and remote memory, normal attention, normal concentration, full language, and normal fund of knowledge."  [*Id.*]

What's more, the ALJ never rejected Williamson's report.  The ALJ relied on it several times to craft the RFC.  [AR26-AR27.]  The judge provided specific reasons why she accepted some portions of the report and rejected others.   Because the Court can discern the reasons why the ALJ did not accept all Williamson's findings, a remand is unnecessary.   *Smith*, 178 F. App'x at 111.

## 2. The State-Agency Psychologists' Opinions

Patrick's challenge to the ALJ's treatment of the state-agency psychologists' opinions fails. Patrick's challenge rests on the limitations the state-agency psychologists noted in the Disability Determination Explanation worksheet. [Pl.'s Br. at 11-12.] But the section of the worksheet that Patrick points to—a list with checkboxes—is not persuasive evidence. *See Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993) ("Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best.").

The various limitations that Patrick relies on appear in the "MRFC1—Mental Residual Functional Capacity" (MRFC) section of the Disability Determination Explanation worksheet. [AR102-AR103, AR112-AR113.] According to Social Security Program Operations Manual System (POMS) DI 24510.060(B), the MRFC1 "is merely a worksheet to aid in deciding the presence and degree of functional limitations and the adequacy of documentation and does not constitute the RFC." *Ilaria G. v. Colvin*, 2024 WL 5244864, at *16 (D.N.J. Dec. 30, 2024) (emphasis removed) (addressing the MRFC1). The Third Circuit has found that ALJs may assign "little or no weight" to the MRFC1. *See Smith*, 631 F.3d at 636-37; *accord Wise v. Comm'r of Soc. Sec.*, 626 F. App'x 357, 360 (3d Cir. 2015) ("[W]e have said that ALJs are not required to give any weight to these fill-in-the-blank and checklist portions of RFC assessments[.]"). So the ALJ did not err by failing to explicitly consider the limitations checked-off in the MRFC1 when formulating Patrick's RFC. *See, e.g.*, *Marshie v. Colvin*, 2015 WL 6082130, at *8 (D.N.J. Oct. 15, 2015).

That aside, the ALJ found the state-agency psychologists' findings that Patrick had "mild to moderate impairment but insufficient to grant disability . . . generally persuasive." [AR27.] Rather than focus on the limitations listed in the MRFC1, ALJs should focus on the

"narrative portions of the assessments [in the Disability Determination Explanation worksheet] where the medical experts expound on their opinions." *Wise,* 626 F. App'x at 360. In the narrative portions of the MRFC here, the state-agency psychologists found Patrick "retains capacity to perform simple tasks, persist at tasks for two hour intervals, interact with others, and adjust to simple changes in work settings." [AR103, AR114.] Both psychologists found "no evidence of significant social limitations." [AR103, AR113.] The ALJ found the state-agency psychologists' findings persuasive after contrasting them with Williamson's findings. [AR27.] The ALJ largely accounted for the state-agency psychologists' opinions when crafting the RFC, but imposed a more restrictive RFC by limiting Patrick's public interaction to occasional. [AR26-AR27.] Thus, substantial evidence supports the ALJ's decision about how much weight to give the state-agency psychologists' opinions. *See Zaborowski,* 115 F.4th at 640.

Patrick's reliance on *Cheyenne M. v. Kijakazi*, 2022 WL 17959521 (D.N.J. Dec. 27, 2022) is misplaced. There, this Court remanded an ALJ's decision because the judge found a state-agency consultant's opinion "somewhat persuasive" and accepted the consultant's opinion on a social interaction limitation, but the ALJ excluded that limitation in the RFC without explanation. *Id.* at *7. Unlike here, *Cheyenne M.* concerned a state-agency consultant's narrative RFC—not the limitations merely checked-off in the MRFC1 that Patrick relies on here. *Id.* Thus, *Cheyenne M.* is different. And unlike the ALJ in *Cheyenne M.* who excluded a limitation in the claimant's RFC, the ALJ largely accepted the state-agency consultants' RFC, but provided a more restrictive RFC than the state-agency consultants did. [*Compare* AR23, *with* AR103, *and* AR114.]

19

### 3. Palmer's Opinion

Substantial evidence supports the ALJ's assessment of Palmer's opinion. The ALJ considered both the supportability and consistency factors when finding Palmer's opinion unpersuasive. 20 C.F.R. §§ 404.1520c(a), 404.1520c(c). And the ALJ provided sufficient reasons to reject Palmer's opinion on Patrick's physical limitations.

For the supportability factor, the ALJ found Palmer's own treatment notes did not support his opinion. [AR26.] Palmer's treatment records—before and after Palmer's opinion—reveal largely unremarkable physical exams, Patrick denied joint-pain and musculoskeletal weakness, and Palmer found Patrick's motor strength in his upper and lower extremities to be normal. [*See, e.g.*, AR617-AR618, AR620-AR621, AR623-AR624, AR626-AR627, AR630-AR632, AR634-AR636, AR726-AR727.] What's more, Palmer never diagnosed a back impairment or recommended treatment. So the ALJ did not need to credit Palmer's opinion on Patrick's physical limitations. *See Chung*, 2025 WL 1065241, at *3 (finding no error in the ALJ's persuasiveness evaluation of claimant's treating physician's opinion where physician did not refer claimant to "pain management" or "raise the possibility of surgery" but instead "recommended long-term physical therapy, home exercises, and acupuncture" (internal quotation marks omitted)).

Turning to the consistency factor, the ALJ found Palmer's opinion inconsistent with other medical evidence. [AR26.] The ALJ noted the medical record "shows little to no evidence of back and leg pain and weakness[.]" [*Id.*] The ALJ did not "need to say more than that." *Zaborowski*, 115 F.4th at 640.

But Patrick complains the ALJ did not consider his x-rays contained in Palmer's treatment records. [Pl.'s Br. at 14-15.] That's wrong. The ALJ did consider the x-rays when

crafting Patrick's RFC. [AR25.] The judge found the x-rays revealed a spine disease and that Palmer had noted a decrease in strength in Patrick's bilateral lower extremities. [*Id.*] Still, the ALJ concluded Palmer never diagnosed a back impairment or recommended treatment and had normal exams with Patrick. [*Id.*] Likewise, the ALJ found no evidence in the record to support Patrick's—or Palmer's opinion on Patrick's—alleged limitations on standing, walking, and sitting. [AR25-AR26.] Even so, given the spine disease shown on the x-rays, the ALJ limited Patrick to work at the medium exertional level. [AR25.]

### B. Substantial Evidence Supports the ALJ's RFC Determination

A claimant's RFC is the most he can do despite his limitations. 20 C.F.R. § 404.1545(a)(1). In formulating an RFC, the ALJ need only include "credibly established" limitations. *Rutherford*, 399 F.3d at 554; *see also Zirnsak v. Colvin*, 777 F.3d 607, 615 (3d Cir. 2014) (explaining the ALJ has discretion to choose whether to include "a limitation [that] is supported by medical evidence, but is opposed by other evidence in the record" but "[t]his discretion is not unfettered—the ALJ cannot reject evidence of a limitation for an unsupported reason" and stating that "the ALJ also has the discretion to include a limitation that is not supported by any medical evidence if the ALJ finds the impairment otherwise credible"). ALJs are free to reject a claimant's subjective complaints of pain and limitations when they are inconsistent with the medical evidence. *See Burns v. Barnhart*, 312 F.3d 113, 129-30 (3d Cir. 2002).

Start with the ALJ's mental RFC determination. Williamson's findings, the state-agency psychologists' opinions, Dr. Lotkowski's treatment records as well as Patrick's neurological records, coupled with the record evidence that Patrick can interact with others, were enough evidence to support the ALJ's mental RFC determination. [AR23-AR27.] The

ALJ found Patrick could perform simple-work related tasks based on Williamson's findings and the state-agency psychologists' opinions. [AR25-AR27.] The judge imposed the public interaction limitation after considering Williamson's findings and various neurological medical records, as well as Patrick's testimony about interacting with others. [AR23, AR25.] That is "more than a mere scintilla[]" of evidence. *Biestek*, 587 U.S. at 103.

Still, Patrick protests, arguing the ALJ did not adequately explain the occasional public interaction limitation. [Pl's Br. at 13-14.] And pointing to *A.D. v. Comm'r, Soc. Sec. Admin.*, 2021 WL 4438239 (D.N.J. Sept. 28, 2021), Patrick argues that inadequate explanation requires a remand. [*Id.*] Not so.

To start, *A.D.* is different. There, the ALJ found the claimant's borderline personality disorder prevented her from having any interaction with the public, which is not the case here. 2021 WL 4438239, at *7. Still, the ALJ found the claimant's disorder allowed her to have only occasional interaction with supervisors and co-workers. *Id.* This Court remanded because the ALJ never explained that occasional interaction limitation. *Id.* So *A.D.* involved a gap in the ALJ's reasoning because on the one hand, the ALJ found the claimant's disorder prevented public interaction, but on the other hand, found the disorder allowed occasional interaction with supervisors and co-workers.

Unlike here, the ALJ never found Patrick cannot interact with the public. The ALJ incorporated the occasional public interaction limitation based on objective medical evidence on word-finding difficulties, expressive aphasia, and mild dysarthria. [AR25-AR26.] Nothing in the record supports a total public interaction ban. Indeed, the record reveals that, at times, medical providers noted Patrick had normal and fluent speech. [AR369, AR575, AR777, AR790, AR803.] And Patrick testified about interacting with friends; sometimes he

22

gets frustrated with his word-finding difficulties and will leave the social setting he is in. [AR56-AR57, AR63-AR64.]  Patrick denied having any arguments with his friends.  [AR57.]

Unlike *A.D.*, this Court can reasonably discern the ALJ's decision to limit Patrick's interaction with the public and not co-workers and supervisors.  *Garland v. Ming Dai*, 593 U.S. 357, 369 (2021) ("[A] reviewing court must uphold even a decision of less than ideal clarity if the agency's path may reasonably be discerned." (citation and internal quotation marks omitted)).  The record shows that at times, Patrick had normal and fluent speech, and at other times, he did not.  It also shows he can interact with people he is familiar with without conflict. As the Commissioner argues, and Patrick has not addressed[2], there are clear links in the record for this Court to discern why the ALJ imposed an occasional interaction with the public without imposing any limitations on his interactions with supervisors or co-workers. And as explained above, the state-agency psychologists found "no evidence of significant social limitations[]" and Patrick could interact with the public.  [AR102-AR103, AR113-AR114.]  The ALJ found those psychologists' opinions persuasive.  [AR27.]  The ALJ, nonetheless, imposed a more restrictive RFC by limiting Patrick's public interaction to occasional after considering the entire record.  [AR26-AR27.]

Patrick persists, arguing the ALJ gave no explanation for her implicit finding that Patrick can interact with supervisors and co-workers with no social limitations.  [Pl.'s Br. at 13.]  True enough, but this Court can glean that finding from the record and the ALJ's decision. The record shows, and the ALJ noted when addressing Patrick's mental impairments at step three, that Patrick often interacts with others without any difficulty. [AR21, AR276.]  For example, in his Function Report, Patrick stated he interacts with others

---

[2] Patrick has not filed a reply brief in support of his appeal.

in person "every few days[,]" to "watch sports and movies, go shopping, [and] have dinner." [AR276.]  Patrick considers himself a "generally [] friendly person" and stated he has "no problems with authority[,]" and can follow written and spoken instructions.  [AR277.] Despite his speech difficulties, Patrick admits he still interacts with others.  [AR276-AR277.] The ALJ balanced Patrick's responses in his Function Report and his testimony, and found Patrick only has a "moderate limitation" in interacting with others. [AR21.]  This Court cannot say the ALJ did not consider Patrick's speech limitations.  So while the ALJ did not explicitly explain why Patrick can work with co-workers and supervisors without any social limitations, the Court can discern the basis for the ALJ's mental RFC determination.  *Ming Dai*, 593 U.S. at 369.

At bottom, Patrick appears to ask this Court to find more limitations than the ALJ did. But this Court cannot reweigh the evidence or substitute its judgment for that of the ALJ. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011).  This is so even if, reviewing the record anew, the Court would have reached a different result than the ALJ did.  *Raglin v. Massanari*, 39 F. App'x 777, 778 (3d Cir. 2002).  Courts must review an ALJ's RFC determination under the deferential substantial evidence standard of review.  *Burns*, 312 F.3d at 129.   And, for the reasons already discussed, substantial evidence supports the ALJ's mental RFC determination here.

Turning to the ALJ's physical RFC determination, substantial evidence supports that determination.  Patrick's challenge to that determination rests on the ALJ's treatment of Palmer's opinion.  [Pl's Br. at 14-15.]  Up top, this Court found substantial evidence supports the ALJ's finding that Palmer's opinion is unpersuasive.  *See supra* at 20-21.  That aside, the ALJ based the physical RFC determination largely on Patrick's degenerative spine disease

indicated on x-rays.  [AR25.]   The judge also considered Patrick's physical limitations but ultimately found that testimony inconsistent with the objective medical evidence.  [AR24-AR25.]  This Court must defer to that credibility call.  *Courtney W. v. Comm'r of Soc. Sec.*, 2024 WL 5244299, at *9 (D.N.J. Dec. 30, 2024).   And the ALJ refused to accept the state-agency medical consultants' findings that Patrick has no exertional limitations because, in the ALJ's view, the record supported a medium exertion limitation.  [AR27.]   In the end, the ALJ thoroughly considered the objective medical evidence, opinion evidence, and Patrick's testimony.   That evidence was "enough to clear [the substantial evidence] low threshold."  *Zaborowski,* 115 F.4th at 640.

## V.  CONCLUSION

For the above reasons, the Court **AFFIRMS** the ALJ's decision finding Plaintiff Patrick C. not disabled under the Act.  An accompanying Order of today's date shall issue.

**s/Renée Marie Bumb**
RENÉE MARIE BUMB
Chief United States District Judge

Dated: September 30, 2025